# LOUISVILLE & NASHVILLE RAILROAD COMPANY *v.* PALMES, Collector.

## IN ERROR TO THE SUPREME COURT OF FLORIDA.

Argued November 8th and 9th, 1883.—Decided November 19th, 1883.

*Construction of Statutes—Constitutional Law—Florida—Franchises—Immunities—Public Improvements—State Courts—Railroads—Taxation.*

The legislature of Florida, acting under the Constitution of the State, passed an improvement act, exempting from taxation the capital stock of railroad companies accepting its provisions. The Alabama and Florida Railroad Company was organized, and constructed a railroad within the State limits, and became entitled to enjoy the exemption. In 1868 the State of Florida adopted a Constitution which provided for a uniform and equal rate of taxation, and that the property of corporations theretofore or thereafter to be incorporated should be subject to taxation. The road and property, rights, privileges, and franchises of the A. & F. Co. being sold under decree of foreclosure, became by mesne conveyances vested in the Pensacola and Louisville Railroad Co. In 1872 the legislature enacted that the P. & L. Co., as assignees of the A. & F. Co., should be exempted from taxation during the remainder of the period for which the A. & F. Co. would have been exempted. In 1877 the title of the P. & L. Co. to its road and other property, and its franchises, rights, privileges, easements, and immunities were conveyed to the Pensacola Railroad Company, and the legislature authorized the P. R. Co. to acquire and enjoy them. The P. & L. Co. possessed, among other things, the power to lease to a railroad company out of the State. It was claimed that this right passed to the P. R. Co., and the latter leased its railroad and property, rights, privileges, easements and immunities to the plaintiff in error. *Held,*

1 That the right of exemption from taxation did not pass from the A. & F. Co. to the P. & L. Co. by the sale under the mortgage.

2. That the language of the act of 1877 was broad enough to create that right anew, if the legislative grant was valid; but that

3. The legislature of Florida, after the adoption of the Constitution of 1868, could not make an original grant to a railroad, exempting its railroad property from taxation.

4. That any right of this kind that could have been created by the act of 1877, was personal, and not assignable.

5. That a demurrer to the bill does not admit the contrary of these facts in law which appear upon the face of the bill, and of which the court must take judicial notice.

6. That the federal question before the court is, whether the State court gave effect to a State law which impairs the obligation of a contract; in deciding which, and in determining whether there was a contract, the

court is not necessarily governed by previous decisions of State courts, except where they have been so firmly established as to constitute a rule of property.

This was a writ of error bringing into review a decree of the Supreme Court of Florida, dismissing a bill in equity filed by the plaintiff in error, which sought to enjoin the defendant, a collector of revenue under the laws of Florida for the county of Escambia, from collecting, by a sale of property levied on for that purpose, certain taxes claimed by him to be due from the complainant.

The ground of jurisdiction is, as stated and shown in the record, that in the cause wherein the decree complained of was rendered there was drawn in question the validity of a statute of the State of Florida, to wit, "An Act entitled an act for the assessment and collection of revenue," approved March 5th, 1881, wherein and whereby certain taxes for State and county purposes were imposed upon the line of railroad extending from the city of Pensacola, in the State of Florida, to the northern boundary of the State of Florida, in the direction of Montgomery, Alabama, of which railroad the plaintiff in error is in possession and is owner; the validity of this statute being questioned on the ground that it was repugnant to the Constitution of the United States, in that it impaired the obligation of a contract, and the decision of the Supreme Court of Florida being in favor of its validity.

The contract, the obligation of which it was alleged has been thus impaired, and of which the plaintiff in error claims the benefit, was asserted to arise as follows:

The general assembly of the State of Florida passed an act, which took effect January 6th, 1855, entitled "An Act to provide for and encourage a liberal system of internal improvements in this State," the preamble to which recites that:

"The Constitution of the State declares 'that a liberal system of internal improvements, being essential to the development of the resources of the country, shall be encouraged by the government of this State, and it shall be the duty of the general assembly, as soon as practicable, to ascertain by law proper objects of

improvements in relation to roads, canals, and navigable streams, and to provide for a suitable application of such funds as may be appropriated for such improvements.' "

The act then proceeded to create an internal improvement fund to aid in the construction of certain described railroads, and other works of internal improvement, by means of corporations organized or to be chartered for that purpose ; and the 18th section provided as follows :

" That the capital stock of any railroad company accepting the provisions of this act shall be forever exempt from taxation, and the roads, their fixtures and appurtenances, including workshops, warehouses, vehicles, and property of every description needed for the purpose of transportation of freight and passengers, or for the repair and maintenance of the roads, shall be exempt from taxation while the roads are under construction and for the period of thirty-five years from their completion, and that all the officers of the companies, and servants and persons in the actual employment of the companies, be and are hereby exempt from performing ordinary patrol or militia duty, working on public roads, and serving as jurors."

By an act of the general assembly of Florida, approved December 14th, 1855, it was enacted :

" That a line of railroad to be constructed from the city of Pensacola, or any other point or points on the waters of Pensacola Bay or the waters of St. Andrews Bay, to the north line of the State, leading in the direction of Montgomery, Alabama, shall be considered proper improvements to be aided from the internal improvement fund in the manner provided for, or which may hereafter be provided for, in 'An Act to provide for and encourage a liberal system of internal improvements in the State,' approved January 6th, 1855."

The Alabama and Florida Railroad Company, by an act approved January 8th, 1853, had been incorporated to build a railroad falling within that description, to extend from some point on the bay of Pensacola to some point on the boundary line between the States of Florida and Alabama, and to meet

and connect with a railroad leading thence to the city of Montgomery. This company, it was alleged in the bill, built and for a time operated the line of railroad contemplated by its charter, and became entitled to the benefits and privileges of the Internal· Improvement Act of 1855, by accepting its provisions and complying with its conditions. Its line of railroad was completed about January 1st, 1860.

By virtue of a decree of foreclosure and sale at the suit of trustees of a first mortgage, to satisfy the bonds secured thereby, the railroad of the Alabama and Florida Railroad Company, and all the rights, privileges, and franchises of the said company, were sold and conveyed on August 7th, 1872, to one A. E. Maxwell, his heirs and assigns, in trust, and by him were sold and conveyed on December 10th, 1872, to the Pensacola and Louisville Railroad Company, a corporation created by the laws of Florida.

The original act incorporating the last-named company was passed July 16th,.1868, but it appeared to have been reorganized by an amendatory act which took effect February 4th, 1872, the 18th section of which was as follows :

" That the Pensacola and Louisville Railroad Company, having become the assignee of the Alabama and Florida Railroad of Florida, and the franchises of the said corporation, and being in possession of and operating the said line of road, which corporation was exempt from taxation for a limited period, the said Pensacola and Louisville Railroad company and its property, now owned or hereafter to be acquired, shall also be exempt from taxation during the remainder of said period."

On May 6th, 1878, in pursuance of a decree of the Circuit Court of the State of Florida, sitting in Leon County, a sale and conveyance was made transferring the title of the Pensacola and Louisville Railroad Company in and to its road and other property, " together with all the franchises, rights, privileges, easements, and immunities " of that company, to the Pensacola Railroad Company. This company was a corporation of the State of Florida, created by an act of the general assembly, which took effect February 27th, 1877. The second section of that act was as follows :

"SEC. 2. *Be it further enacted,* That the said Pensacola Railroad Company be, and it is hereby, authorized and empowered to acquire by purchase and assignment all the property, rights, franchises, privileges, and immunities of the Pensacola and Louisville Railroad Company, a corporation created by an act of the general assembly of the State, approved July 16, A.D. 1868, whether the same were acquired under the laws of the States of Florida or Alabama or the laws of the United States, or as the assignee or successor of the Alabama and Florida Railroad Company ; and upon completion of the said purchase and assignment, the said Pensacola Railroad Company shall be deemed in law and equity to be fully invested with and entitled to all the said property, rights, franchises, privileges, and immunities of said Pensacola and Louisville Railroad Company, as though the same were originally granted to or acquired by the said Pensacola Railroad Company."

By the 13th section of the act of 1872, amending the charter of the Pensacola and Louisville Railroad Company, it was provided that :

"It shall be lawful for said company to purchase, lease, acquire an interest in, to unite or consolidate with, lease or sell to any other railroad company in or out of the State, and to make the same one company, with a consolidated stock and property and with one board of directors," &c.

The right under this section to sell and transfer its property and franchises to a corporation of another State, it was claimed, passed from the Pensacola and Louisville Railroad Company to the Pensacola Railroad Company ; and accordingly, on October 20th, 1880, the Pensacola Railroad Company conveyed to the Louisville and Nashville Railroad Company, the plaintiff in error, its railroad from its junction with the Mobile and Montgomery Railway to its terminus in Pensacola Bay, its property, real and personal, with certain exceptions, all its franchises, except the franchise to be and exist as a corporation, rights, privileges, easements, and immunities, by virtue of which conveyance the plaintiff in error claimed in the bill that it became entitled to all the rights, property, privileges, franchises, and

immunities of the Alabama and Florida Railroad Company, the Pensacola and Louisville Railroad Company, and the Pensacola Railroad Company, under the various acts incorporating these companies, and àcts amendatory to the same.

The plaintiff in error, the Louisville and Nashville Railroad Company, was a corporation of Kentucky, and by an amendment to its charter, which took effect March 6th, 1878, reciting that its stockholders had become largely interested in the commerce and railroad business between the States of Kentucky and Tennessee and the southeast, and the several railroad connections in that part of the country, by an extension of its system, was enabled " to operate, lease or purchase, upon such terms or in such manner as they deem best, any railroad in any other State or States deemed necessary for the protection of the interest of the stockholders."

*Mr. John L. Cadwalader* for the plaintiff in error.

I. All the facts necessary to obtain relief are admitted. II. The State contracted with the Pensacola Railroad Company that if it would buy the old road and carry on the business, it should be exempt from taxation. The State is estopped from denying the exemption. *Humphrey* v. *Pegues,* 16 Wall. 244; *Railroad Companies* v. *Gaines,* 97 U. S. 697, 711–2; *Railroad Company* v. *County of Hamblen,* 102 U. S. at 277. III. The State is also estopped by the decision of its own court in the case of *Gonzales* v. *Sullivan,* involving this right as between the State and the plaintiffs privy in estate. Bigelow, Estoppel, lxiii; 45, 94–5, 284; Cooley on Constitutional Limitations (5 ed.), 59–60; Freeman on Judgments, § 165; Taylor on Evidence, § 1689. *Blakemore's Case,* 2 Den. Cr. C. 410; *Smith* v. *Kernochen,* 7 How. 198; *Preble* v. *Board of Supervisors,* 8 Bissel, 358; *Finney* v. *Boyd,* 26 Wis. 366; *State* v. *C. & L. Railroad Co.,* 13 S. Car. 290. Indeed, such an estoppel by judgment may fairly be said to make part of the title to the property concerned. Brooke's Abridgment, Estoppel, 15; *Adams* v. *Barnes,* 17 Mass. 364; *Kelly* v. *Donlin,* 70 Ill. 378; *State* v. *C. & L. Railroad. Co.,* 13 S. Car. p. 313–4. IV. The

plaintiff's position is like that of a purchaser of bonds rely-
ing on the decision of the Supreme Court of a State adjudi-
cating the validity of the bonds. *Gelpcke* v. *Dubuque*, 1
Wall. 175; *Louisiana* v. *Pilsbury*, 105 U. S. at 295. V. The
constitutionality of the act of 1855 is not an open question
in this court. *New Jersey* v. *Wilson*, 7 Cranch, 164; *Jefferson
Bank* v. *Skelley*, 1 Black, 436; *Home for the Friendless* v.
*Rouse*, 8 Wall. at 438; *Wilmington Railroad* v. *Reid*, 13
Wall. 264; *Railway Company* v. *Whitton*, 13 Wall. 269;
*Humphrey* v. *Pegues*, 16 Wall. at 249. That being so, the
Supreme Court of Florida has decided its meaning in ac-
cordance with the contention of the plaintiff. *Gonzales* v.
*Sullivan*, 16 Fla. 791; and that construction is binding
upon this court. *Burgess* v. *Seligman*, 107 U. S. 20. VI.
The exemption in question was not attached to any par-
ticular corporation, but to the line of road. If this can be
maintained, it follows that the exemption goes with the prop-
erty. *New Jersey* v. *Wilson*, 7 Cranch, 164; *Tennessee* v.
*Hicks*, cited in *State* v. *Whitworth*, 8 Lea (Tenn.), 594; *Chicago,
&c., Railroad Company* v. *Pfaender*, 23 Minn. 217; *St. Paul,
&c., Railroad Company* v. *Parcher*, 14 Minn. at 328; *Winona,
&c., Railroad Company* v. *County of Deuel*, 7 Am. & Eng.
R. R. Cas. 348.

*Mr. E. A. Perry* for the defendant.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

After reciting the facts in the foregoing language, he said:

The exemption from taxation, created by the 18th section of
the Internal Improvement Act of 1855, is, in every respect,
similar to that which was declared in *Morgan* v. *Louisiana*,
93 U. S. 217, to be not assignable. No words of assignability
are used by the legislature of the State in the language creating
it, and, from its nature and context, it is to be inferred that the
exemption of the property of the company was intended to be
of the same character as that declared in reference to its capital
stock and to its officers, servants and employees, and that all
alike were privileges personal to the corporation or to individ-

uals connected with it, entitled to them by the terms of the law. This exemption, therefore, did not pass from the Alabama and Florida Railroad Company to the Pensacola and Louisville Railroad Company by the conveyances which passed the title to the railroad itself, and to the franchises connected with and necessary in its construction and operation.

This conclusion is confirmed by the 18th section of the act of February 4th, 1872, amending the charter of the Pensacola and Louisville Railroad Company. That section recites that the. last-named company having become assignee of the Alabama and Florida Railroad Company, and of its franchises and property, "which corporation was exempt from taxation for a limited period, the said Pensacola and Louisville Railroad Company and its property, now owned or hereafter to be acquired, shall also be exempted from taxation during the remainder of its said period." Here the original exemption is declared to be the privilege of the Florida and Alabama Railroad Company, the particular corporation to which it was granted, and the necessity for conferring it by a new legislative grant upon the assignee of the property and franchises of the original corporation, rests upon the implication that the exemption did not pass to it by the assignment between the parties. And the further inference is equally necessary, that the exemption transferred or created in the new company by the terms of the legislative grant, is identical in its character as a personal and unassignable privilege to the new grantee, with that it had when it belonged to the first company.

But the 2d section of the act of February 27th, 1877, incorporating the Pensacola Railroad Company, authorized and empowered it to acquire, by purchase. and assignment, all the property, rights, franchises, privileges, and immunities of the Pensacola and Louisville Railroad Company, and upon completion of such purchase and assignment, declared that the former should be deemed, in law and in equity, to be fully invested with and entitled to all the said property, rights, franchises, privileges, and immunities as though the same were originally granted to or acquired by the said Pensacola Railroad Company.

It is claimed that this language is broad enough to cover the assignment and transfer of the immunity from taxation granted to the Pensacola and Louisville Railroad Company by the 18th section of its charter. And we are of this opinion. The language is comprehensive and unequivocal, and the word immunity is apt to describe the exemption claimed. · It admits of no doubt, we think, if the Pensacola and Louisville Railroad Company were entitled to this exemption, and if the legislative grant of authority to make and accept this assignment of it was valid and effective, that the right to be exempt from taxation according to its terms passed to the Pensacola Railroad Company. But it must be borne in mind that it must be taken to have vested in the latter, if at all, precisely as it had in the former, that is, as a personal privilege. The assignment in the particular instance, based upon the express authority of · a new enactment, did not impart to the immunity the quality of general assignability to other successors in the title to the property and franchises, claiming only under a conveyance between the parties.

The title of the plaintiff in error, therefore, to the exemption claimed, must be supported by some other authority. This is claimed to be found in the general power, given by the 13th section of its charter, to the Pensacola and Louisville Railroad Company to lease or sell to or consolidate with any other railroad company in or out of the State, which power passed with others to the Pensacola Railroad Company by the 2d section of its charter. But as we have already seen, and as was decided in *Morgan* v. *Louisiana*, 93 U. S. 217, and *Wilson* v. *Gaines*, 103 U. S. 417, the exemption from taxation does not pass by virtue of a conveyance of the railroad and its franchises, which was all the Pensacola Railroad Company could pass under that authority, but requires for its transfer some particular and express description, indicating unequivocally the intention of the legislature that it might pass by an assignment. That does not exist in this case, and the exemption claimed by the plaintiff in error fails because it was not and could not be transferred to it, under the law, by the Pensacola Railroad Company.

It is sought to avoid this conclusion by converting the

question into one of pleading. It is said that the bill alleges, as a matter of fact, that the exemption passed to and vested in the complainant below, and that the truth of the allegation is admitted by the demurrer. But this is matter of law; the documents of title are exhibited with the bill and constitute part of the record; and we take judicial notice of their legal effect. A fact impossible in law cannot be admitted by a demurrer. In *Wilson* v. *Gaines*, 103 U. S. 417, it was inferred in the face of a demurrer, claimed to be an admission of a contrary allegation, that the sale did not pass any rights of property not described as within the lien of the mortgage.

We have thus shown that the claim of the plaintiff in error to the exemption alleged fails, because the Pensacola Railroad Company, if it possessed it, had no power to convey it. It will appear, on further examination, that it fails for a distinct and deeper reason, namely, because the Pensacola Railroad Company was itself not entitled to any such exemption. That company was incorporated by the act of February 27th, 1877, which undoubtedly did purport to grant to it, as assignee of the Pensacola and Louisville Railroad Company, in terms sufficiently broad, the immunity from taxation, which, by the 18th sec. of the act of February 4th, 1872, was expressly declared to be granted to the latter.

Both the statutes, however, were passed by the general assembly of Florida, acting under the Constitution of that State, which went into effect in 1868.

Article XII., sec. 1, of that Constitution, is as follows:

" The legislature shall provide for a uniform and equal rate of taxation, and shall prescribe such regulations as shall secure a just valuation of all property, both real and personal, excepting such property as may be exempted by law for municipal, educational, scientific, religious, or charitable purposes."

And article XIII., sec. 24, is as follows:

" The property of all corporations, whether heretofore or hereafter incorporated, shall be subject to taxation, unless such corporation be for religious, educational, or charitable purposes."

In 1875 this clause was amended so as to read as follows:

"The property of all corporations, whether heretofore or here-after incorporated, shall be subject to taxation, unless such property be held and used exclusively for religious, educational, or charitable purposes."

It is under the authority and in pursuance of the mandates of these constitutional provisions that the legislature passed the act of March 5th, 1881, under which the road of the plaintiff in error is subjected to taxation, and the validity of which is here under review.

It cannot be and is not contended that under these constitutional limitations the legislature of Florida could make an original grant to a railroad corporation exempting its railroad property from taxation.

But the grant to the Pensacola and Louisville Railroad Company by the act of 1872, and that to the Pensacola Railroad Company by the act of 1877, though in form the renewal or transfers of previously existing grants, were in fact the creation of new ones. In *Trask* v. *McGuire*, 18 Wall. 391-409, it was said, speaking of similar provisions in the Constitution of Missouri: "The inhibition of the Constitution applies in all its force against the renewal of an exemption equally as against its original creation;" and in *Shields* v. *Ohio*, 95 U. S. 319, it was decided that in cases of corporations created by consolidation, the powers of the new company did not pass to it by transmission from its constituents, but resulted from a new legislative grant, that could not transcend the constitutional authority existing at the time it took effect. It follows that the exemption from taxation in terms contained in the charters of 1872 and 1877 were void, as unauthorized and prohibited by the State Constitution of 1868.

It does not weaken this conclusion to say that the exemption contained in the Internal Improvement Act of 1855 was authorized by the Constitution of the State then in force, which may be admitted, and that it was assignable in its nature or by its terms in such manner that it became impressed upon the property itself, into whosesoever hands it should afterwards come,

following the title, like an easement or a convenant running with the land, which we have shown, however, not to be the case; for, even on that supposition, the privilege is one that must be exercised by some person capable in law of accepting and exercising it. The conception of an immunity that is impressed upon the thing in respect to which it is granted is purely metaphorical. The grant is to a person in respect of a thing, and it is said to inhere in or be attached to the thing only when by its terms the grant is assignable by a conveyance of the thing, and passes as an incident with the title to each successor. There must always be a person capable not only of receiving the title, but also of accepting the conditions accompanying it, and which constitute the exemption; otherwise the conditions become impossible and void.

After the adoption of the Constitution of Florida of 1868, there could be no corporation created capable in law of accepting and enjoying such an exemption, for that was prohibited by the constitutional provisions that have been cited. In the case of the Pensacola and Louisville Railroad Company, 1872, the capacity at that time to receive this privilege depended altogether upon the legislative act amending its charter to that effect; and if any doubt as to this might be reasonably entertained, certainly none can arise as to the Pensacola Railroad Company, which derived all its powers and its very existence from legislation dependent for its validity wholly upon the Constitution of 1868. The prohibition which forbids the legislature from exempting the property of railroad corporations from taxation, makes it impossible for the legislature to create such a corporation capable in law of acquiring and holding property free from liability to taxation.

It has, however, been earnestly urged upon us in argument, by counsel for the plaintiff in error, that the Supreme Court of Florida, in the case of *Gonzalez* v. *Sullivan*, 16 Fla. 791, explicity decided, in opposition to the views we have expressed, that the railroad and property, the subject of this litigation, then held by the Pensacola and Louisville Railroad Company, were exempt from taxation, according to the terms of the provision in the Internal Improvement Act of 1858; and it is pressed

upon us as a conclusive determination of the law of Florida upon the point, particularly authoritative in the present case, for the reason that the plaintiff in error, having subsequently to that decision acquired its title, may be presumed to have acted upon the faith of it.

This presumption is not pressed, however, to the extent of establishing a contract between the plaintiff in error and the State of Florida, the obligation of which has been impaired by any law subsequently passed, nor of working an estoppel against the State as *res adjudicata*, with an equivalent effect. The decision cited, therefore, cannot be allowed any greater effect as an authority than ought to be given, in cases of this description, to the judgments of State tribunals.

The question we have to consider and decide is, whether, in the judgment under review, the Supreme Court of Florida gave effect to a law of the State which, in violation of the Constitution of the United States, impairs the obligation of a contract. In reaching a conclusion on that point, we decide for ourselves, independently of the decision of the State court, whether there is a contract, and whether its obligation is impaired ; and if the decision of the question as to the existence of the alleged contract requires a construction of State constitutions and laws, we are not necessarily governed by previous decisions of the State courts upon the same or similar points, except where they have been so firmly established as to constitute a rule of property. Such has been the uniform and well-settled doctrine of this court. *State Bank of Ohio* v. *Knoop*, 16 How. 369–391.

As was said by Chief Justice Taney in the case of *The Ohio Life Ins. & Trust Co.* v. *Debolt*, 16 How. 416–432 : " But this rule of interpretation is confined to ordinary acts of legislation, and does not extend to the contracts of the State, although they should be made in the form of a law. For it would be impossible for this court to exercise any appellate power in a case of this kind, unless it was at liberty to interpret for itself the instrument relied on as the contract between the parties. It must necessarily decide whether the words used are words of contract, and what is their true meaning, before it can determine whether the obligation, the instrument created, has or has

not been impaired by the law complained of. Now, in forming its judgment upon this subject, it can make no difference whether the instrument claimed to be a contract is in the form of a law, passed by the legislature, or of a covenant or agreement by one of its agents acting under the authority of the State."

To the same effect are the cases of *Jefferson Branch Bank* v. *Skelly*, 1 Black, 436, and *Bridge Proprietors* v. *Hoboken Company*, 1 Wall. 116.

It is true that in all these cases the State courts, whose judgments were brought into review, had construed the statutes as not creating a contract; but the principle is equally applicable in the converse case. *Burgess* v. *Seligman*, 107 U. S. 20.

It is undoubtedly true that the opinion of the Supreme Court of Florida in the case of *Gonzalez* v. *Sullivan*, 16 Fla. 791, is not consistent with that which we have expressed upon some of the principal questions involved in this case. It did declare, speaking of the effect of the Internal Improvement Act of 1855, "that an exemption from taxation resting in contract is annexed, by the terms of the law which created it, to the road itself, and not to the companies," and that by the act of 1872 the Pensacola and Louisville Railroad Company, as assignee of the Florida and Alabama Railroad, became entitled to the exemption, because "the property passed, and with it, as an incident, went the exemption."

But the main topics of discussion in the opinion were, whether the Florida and Alabama Railroad was within the scope of the Internal Improvement Act of January 6th, 1855, by virtue of the amendment of December 14th, 1855, the constitutional authority to pass which was denied in argument but affirmed by the court; and the question as to the effect of the provisions of the Constitution of 1868, which we have considered, upon the capacity of the Pensacola and Louisville Railroad Company and the Pensacola Railroad Company to accept the privilege and benefit of the exemption, by legislative authority exerted in 1872 and 1877, does not seem to have been raised or noticed, much less adjudged.

In our opinion there is no error in the judgment of the Supreme Court of Florida in the matter complained of, and

*It is accordingly affirmed.*