Shadden *v.* McElwee.

SHADDEN *v.* McELWEE.

(*Knoxville.* November 1st, 1887.)

1. SLANDER. *Privileged communications. Pleading.*

The defense to an action of slander that the defamatory words were privileged, may be made either under the general issue or by special plea.

Case cited and approved: Dunn *v.* Winteis, 2 Hum., 513.

2. SAME. *Same. Statements of witness, under oath, in judicial proceedings conditionally privileged.*

Defamatory statements made by a witness, under oath, in the course of judicial proceedings, are not absolutely, but only *prima facie* or conditionally privileged.

Cases cited and approved: Lea *v.* White, 4 Sneed, 111; Rouch *v.* Baker, 6 Heis., 404–407; Davis *v.* McKees, 8 Hum., 40; 42 N. Y., 161; 28 Iowa, 51; 32 Maine, 442; 13 Wis., 193; 127 Mass., 316.

3. SAME. *Same. Same. Question for jury.*

The question as to whether such statements are privileged or not is one that should be submitted to the jury with proper instructions.

Shadden *v.* McElwee.

4. SAME. *Same.* *Same.* *Test of privilege.*

    Defamatory statements made by a witness in good faith and without malice, upon his oath, in the course of judicial proceedings, are privileged; but if such statements were not called for, nor pertinent to the issues in the case, nor believed to be so by the witness, and are injected by him voluntarily and maliciously, for the purpose of defaming and injuring another, they are not privileged.

FROM ROANE.

Appeal in error from Circuit Court of Roane County. S. A. ROGERS, J.

SAM EPPS YOUNG and E. E. YOUNG for Shadden.

L. A. GRATZ and NELSON & BUSH for McElwee.

FOLKES, J. This is an action for slander.

The words as charged in the declaration are: "He (meaning plaintiff) stole my horse;" and "he (meaning plaintiff) came to my house while I was away and stole my horse," and "he (meaning plaintiff) is a rogue, for he stole my horse, and I did not see him back for days."

The defendant pleaded the general issue, and in addition thereto pleaded that the words, if spoken, were uttered as a witness under oath, in a cause pending in the Circuit Court of Roane County, wherein the plaintiff here was plaintiff there, and defendant here was defendant there; and that as

such witness, replying to questions propounded to him, his answers were privileged.

While the matters set out in the special plea might have been relied on under the plea of not guilty, the defendant might properly have interposed the special plea in a case where the occasion of the speaking or publishing furnishes a defense to the action. *Dunn* v. *Winters*, 2 Hum., 513.

To this special plea the plaintiff replied that the words were not spoken in response to questions propounded to him, but were maliciously injected into the testimony voluntarily and falsely, and were not pertinent to the issue in said suit, but were spoken for the purpose of defaming and injuring plaintiff.

To this replication there was a demurrer to the effect that "it was immaterial to the validity of the defense set up in the special plea whether the words spoken by the defendant concerning the plaintiff as a witness under oath in a judicial proceeding were uttered, though not in answer to any question; neither is it material whether or not they were spoken maliciously and voluntarily. In neither event can defendant be held liable there-for," etc.

The demurrer was presented under several heads, but the substance and effect of them all is contained in the language above quoted.

The Circuit Court sustained the demurrer, and the plaintiff declining to further reply, the suit was dismissed, and plaintiff has appealed in error.

The judgment of the Circuit Court is erroneous, and . must be reversed.

It is insisted on behalf of the defendant that it is not a matter between individuals, but concerns the due administration of justice; that a witness should be allowed to speak, according to his belief, the truth, without regard to consequences, and should be encouraged to do this by the consciousness that his utterances are absolutely privileged, leaving him only liable to indictment for perjury if he speaks other than the truth; that witnesses should not be hampered while on the stand with fears of a suit for damages.

Mr. Townshend, in his work on Slander and Libel, p. 387, 3d Edition, says this is the view in the courts of England and some of the States, and the author lends the weight of his own opinion thereto.

While plausible, it is, in our opinion, unsound. The act of testifying as a witness must be either in the exercise of a right or the performance of a duty, and in either case the act must be performed in good faith.   If he avail himself of his position as a witness to maliciously answer, with a knowledge that such answer is not pertinent or relevant, the law withdraws the protection it would otherwise have afforded him.

Where the defendant, a witness, was asked if a certain person was attended by a physician, his answer was, "Not as I know of; I understood he had a quack—I would not call him a physician." In an action brought for these words, it was held

---

---

proper to charge the jury that if they "believed,
from all the circumstances proved, from the ques-
tions put, from the manner of answering, and from
the answers themselves, that the defendant testified
in good faith, or in the belief that his answers
were pertinent or relevant, then the law protected
him; but if the defendant was actuated by mere
malice, and used the words for the mere purpose
of defaming the plaintiff, then the law withdrew
the protection it would otherwise have afforded
him." *White* v. *Carroll,* 42 N. Y., 161; *Smith* v.
*Howard,* 28 Iowa, 51; *Barnes* v. *McCrate,* 32 Maine,
442.

It follows, of course, that the witness is not lia-
ble if the answers are pertinent and responsive; or,
as it is expressed in some of the cases, the rele-
vancy of the words complained of to the matter
at issue is the test of the privilege.

In Odger's Digest of the Law of Libel and
Slander, p. 191, a much later work than that of
Mr. Townshend, it is said:

"A witness in the box is absolutely privileged
in answering all questions asked him by conusel
on either side; and even if he volunteers an ob-
servation (a practice much to be discouraged), still
if it has reference to the matter in issue, or fairly
arises out of any question asked him by counsel,
though only going to his credit, such observation
will also be privileged. But a remark made by a
witness in the box, wholly irrelevant to the mat-
ter of inquiry, uncalled for by any question of

counsel, and introduced by the witness maliciously for his own purposes, would not be privileged, and would also probably be a contempt of Court."

Such seems to be the rule also in Wisconsin and Massachusetts. *Calkins* v. *Sumner*, 13 Wis., 193; *McLaughlin* v. *Cowley*, 127 Mass., 316.

While we have no reported cases in our State with reference to the privilege of a witness, there are adjudications concerning judicial proceedings, and the privilege afforded thereunder, which are in harmony with the conclusions here reached.

In *Lea* v. *White*, 4 Sneed, 111, the words complained of were used in a return to an *habeas corpus*, imputing insolvency and inability to support two free colored children, under covenant of indenture; that said children were cruelly neglected and maltreated, and that there was reason to believe that the petitioner would sell them into slavery. This Court said:

"There are many occasions upon which the legal presumption of malice, from the fact that the words are defamatory, does not arise. The communications are, on account of the occasion on which they are made, *prima facie*, or, as the books have it, 'conditionally privileged; that is, they do not amount to defamation until it appears that the communication had its origin in actual malice in fact.' In such cases it will be incumbent on the plaintiff to show, in addition to the injurious publication, a malice in fact, and that the occasion was seized upon as a *mere pretext*."

It is perhaps needless to add that where the matter alleged is pertinent to the issue, or fairly supposed to be so, although not in the strictest sense relevant, the pleader is absolutely privileged, although he may have also entertained sentiments of malice to the adverse party.

The Court in this case further held that "the question whether there be or be not reasonable or probable cause may be for the jury or not, according to the particular circumstances of the case." The pertinency of the matter to the occasion is that which is meant by probable cause. In that case it was held that whether the matter there complained of could reasonably have been thought by the defendant necessary to his defense, was properly a question for the Court, and that it was within the class of absolutely privileged communications, and therefore not actionable.

In *Joseph Rouch* v. *Catherine Backer's next friend,* 6 Heis., 404–407, the doctrine of *Lea* v. *White* is reaffirmed. It was a case where Rouch was sued in libel by a young girl, of whom he had written in a petition to the County Court as next friend for certain minors for the removal of their guardian; that "said guardian has had in his family a girl, who is now probably over sixteen years of age, who came to live with him at about the age of thirteen, and has remained in his family ever since. Her reputation is ruined, and she is now an example of shame and prostitution." The plea was that the words had been used in judicial proceed-

ings in good · faith and without malice.   The Trial
Judge had charged the jury that, as the plaintiff
was no party to the suit, the communication could
not be privileged, and there was a verdict and
judgment for $5,000.   The cause was reversed in
this Court for error in said charge, and in not
charging, as requested, that express or actual mal-
ice must be shown on the part of the petitioner
in that cause.

The well-known distinction between absolutely
privileged communications and those only condition-
ally so, is well stated in the case just referred to.

Again, in *Davis* v. *McKees*, 8 Hum., 40, Judge
Green delivering the opinion of the, Court, in re-
versing the judgment of the Court below, said:

"Whether the words that were spoken were
used in the legitimate defense of himself, or were
employed maliciously as a means of abuse and
slander of McKees, should have been left to the
jury."

This was a case where the prosecutor was told
by the Magistrates, who had just adjudged the
proof insufficient to convict the defendant of per-
jury, that they would have to tax him with the
costs.   The prosecutor replied that he did not see
how they could do that, "as the defendant had
sworn falsely and he had proved it."   It was for
the use of this language, under these circumstances,
that the suit was brought, with the result above
stated.

We recognize fully. the importance to a due ad-

ministration of justice, of upholding ·the privilege accorded parties to write and speak freely in judicial proceedings; but in so doing we must not lose sight of the fact that it concerns the peace of society, that the good name and repute of the citizen shall not be exposed to the malice of individuals, who, under the supposed protection of an absolute privilege, make use of the witness-box to volunteer defamatory matter in utterances not pertinent. To hold such persons responsible in damages cannot fairly be said to hamper the administration of justice. The privilege of a witness is great, and will be protected in all proper cases, but it must not be mistaken for unbridled license. It follows that the truth or falsity of the matters alleged in the replications in this case, involving the good faith of the defendant in using the words imputed to him in the defense of himself, or whether they were employed as a means of abuse and slander of the plaintiff, should have been submitted to the jury with proper instructions. That this may be done the judgment is reversed and cause remanded.