## CROCKETT *v.* MCLANAHAN.

### (*Nashville.*   December Term, 1902.)

**1.  ELECTIONS.  Bill attacking result of, on account of illegal votes—names of voters pertinent to issue.**

In a bill filed to enjoin an issue of municipal bonds claimed to have been voted in aid of a railroad, and challenging the election on the ground that the bonds or municipal aid subscription had·not been carried by a three-fourths majority of the legal voters, as required by. statute, it is necessary to set out specifically the names of the illegal or disqualified voters in order that an issue in respect of their qualification may be made.   (*Post, p.* 524.)

Cases cited:   Moore *v.* Sharp, 98 Tenn., 493; Blackburn *v.* Vick, 2 Heisk., 383.

**2.  LIBEL.  Pleadings privileged when—Pertinency the test.**

In an action for libel based on alleged defamatory matter contained in pleadings, the cardinal inquiry is whether such matter is pertinent to the issue involved; if it is, or fairly supposed to be so, the pleading is absolutely privileged.   (*Post, pp.* 522-526.)

Cases cited:   Lea *v.* White, 4 Sneed, 111; Shadden *v.* McElwee, 86 Tenn., 152; Jones *v.* Brownlee (Mo.), 61 S. W. Rep., 795; 53 L. R. A., 448.

**3.  SAME.  Same.  Pertinency of, to be determined by court.**

In an action for libel, it is a question for the court to determine whether the alleged libelous matter in a pleading is pertinent to the issue in that suit; and by pertinency of matter to the issue is meant probable cause.   (*Post, pp.* 524, 526.)

NOTE.—As to privilege of defamatory words in pleading, see note to Randall *v.* Hamilton (La.), 22 L. R. A., 649.

Crockett v. McLanahan.

**4. SAME. DECLARATION.** What averments therein not admitted by demurrer.

It is well settled that a demurrer to a declaration does not admit inferences from the facts or conclusions of law averred therein. (*Post, pp.* 525, 526.)

Cases cited: Park *v.* Kelly Axe Co., 49 Fed. Rep., 618; Kent *v.* Lake, etc., Co., 144 U. S., 75; Hopper *v.* Covington, 118 U. S., 148; Greef *v.* Society (N. Y.), 54 N. E., 714, 46 L. R. A., 288, 73 Am. St. Rep., 659.

**5. SAME. Same. Same.**

Neither are the averments in a declaration as to the meaning and construction of a writing or record upon which the action is based admitted by a demurrer. (*Post, p.* 525.)

Cases cited: National Park Bank *v.* Halle, 30 Ill. App., 17; L. & N. R. R. Co. *v.* Palmes, 109 U. S., 244.

**6. SAME.** Pleadings absolutely privileged—**No action whatsoever thereon.**

The immunity which the law confers upon the pleader of matters absolutely privileged, e. g., matter pertinent to the issues involved, is a shield of defense against not only a party to the record, but a stranger thereto. (*Post, pp.* 521-526.)

Cases cited and approved: Cooley *v.* Galyon, 109 Tenn., 1; Henderson *v.* Broomhead, 4 Hurl. & N. (Eng. Exch.), 569.

Case overruled on this point: Ruohs *v.* Backer, 6 Heisk., 395; 19 Am. Rep., 598.

**7. SAME.** Application of principles to case in judgment.

Defendant herein filed a bill in equity to enjoin the issuance of bonds of the city of Nashville in aid of the Nashville & Clarksville Railroad Company, authorized to be issued by an apparent three-fourths majority of the voters of said city at an election held for that purpose; one of the grounds upon which said bill was predicated was that the bonds, or municipal subscription, has not received the necessary three-fourths majority of legal votes, and, in support of this contention, it was averred that plaintiff herein (and a large number of others) had illegally voted in said election; whereupon plaintiff herein brought this action for libel, alleging in his

Crockett v. McLanahan.

declaration, in substance, that defendant had charged him with being guilty of a misdemeanor and a violation of the criminal laws of the State and that said charge was made "falsely, recklessly, wantonly . . . and without probable cause, and not under such circumstances as created a belief in the mind of defendant, herein, that it was true." The defense, interposed by demurrer, was that the alleged libelous matter was absolutely privileged. The circuit judge sustained the demurrer and plaintiff appealed.

HELD:  1st. That the demurrer to the declaration did not admit the allegation that the charge complained of was made without probable cause, that being a question of law.

2d. That the question of the legality of plaintiff's vote was pertinent to the issues in the bond suit and the allegations of the bill in respect thereto were absolutely privileged and no action could be based thereon by plaintiff though a stranger to that suit.

FROM DAVIDSON.

Appeal from Circuit Court of Davidson County. JOHN W. CHILDRESS, Judge.

W. H. WASHINGTON and J. M. HEAD, for Crockett.

J. C. BRADFORD and JOHN J. VERTREES, for McLanahan.

MR. JUSTICE McALISTER delivered the opinion of the Court.

The question presented for our determination upon this record is whether a party to a judicial proceeding is liable in damages to a stranger to the record for defamatory matter alleged in the pleading con-

cerning him, or whether said matter, being pertinent and relative to the issue, is not absolutely privileged.

The allegations of the declaration are that on June 2, 1902, the defendant, J. Craig McLanahan, filed a bill in the United States circuit court for the Middle District of Tennessee, in which it was averred that on the 8th of August, 1901, an election was held in the city of Nashville to determine whether the city should subscribe one million dollars of the capital stock of the Nashville & Clarksville Railroad Company, and that at said election the plaintiff (Crockett) was an illegal voter, for the reason that, after being registered in the twentieth ward, he had changed his residence, and had not again registered twenty days before said election, as required by law, and yet cast his vote at said railroad election. It is alleged that defendant (McLanahan) in said bill meant to charge that plaintiff (Crockett) was an illegal voter in said election, and guilty of a high misdemeanor and a violation of the criminal laws of Tennessee. It is alleged in the second count of plaintiff's declaration that said allegations were made falsely, recklessly, wantonly, with actual malice, and in bad faith; that they were made without probable cause, and not under such circumstances as reasonably created a belief in the mind of defendant (McLanahan) that they were true. It is further alleged that plaintiff was not a party to said suit in the federal court and had no interest in it. A demurrer was

Crockett v. McLanahan.

interposed to this declaration, which assigned the following causes, to-wit: "(1) It shows on its face that the alleged libelous publication is an averment in a bill filed by this defendant and others, as complainants, in the circuit court of the United States for the Middle District of Tennessee, against the Tennessee Central Railroad *et al.*, to enjoin the issuance of bonds by the mayor and city council of Nashville in payment of a subscription to the capital stock of said railway, upon the ground, among others, that said subscription did not receive the requisite three-fourths of the votes cast at the election held with respect thereto, and that plaintiff's vote and the votes of others were counted for said proposition when they were illegal and void, for that said voters were not duly registered and voted in wards in which they did not reside. Defendant says that the alleged illegal, libelous statement is a pleading in a judicial proceeding in said court, which does not assail the plaintiff's character, and therefore is absolutely privileged, and that this suit can not, for that reason, be maintained against him. (2) The declaration does not show that said suit is still pending, undetermined, and that, therefore, this suit is premature, and can not now be prosecuted against this defendant." At the September term, 1902, of the circuit court of Davidson county, Hon. John W. Childress, presiding, the demurrer was sustained and the suit dismissed. Plaintiff ap-

pealed, and has assigned as error the action of the circuit court in sustaining the demurrer.

The determinative question of law arising upon the pleadings is whether the alleged defamatory matter was absolutely, or only conditionally, privileged. The rule on this subject at common law was thus stated by Mr. Townshend in his work on Slander and Libel (4th Ed., sec. 221), viz.: "In a civil action, whatever the complainant may allege in his pleading in connection with his grounds of complaint, can never give a right of action for libel. The immunity thus enjoyed by a party complaining extends also to a party defending. Whatever one may allege in his pleading by way of defense to the charge brought against him, or by way of countercharge, counterclaim, or set-off, can never give a right of action." This rule was adopted in this State at an early day, but it was coupled with the qualification that the alleged defamatory matter must be pertinent or material to the subject of inquiry in the particular litigation.

In *Lea* v. *White,* 4 Sneed, 113, it was said, viz.: "The communications are, on account of the occasion on which they are made, *prima facie,* or, as the books have it, 'conditionally privileged; that is, they do not amount to defamation (actionable) until it appears that the communication had its origin in actual malice in fact.' In such cases it will be incumbent on the plaintiff to show, in addition to the injurious publication, malice in fact, and that the occasion was

Crockett v. McLanahan.

seized upon as a mere pretext." Illustrations of this class of communications are statements in respect of the character of servants, official communications, reports of judicial proceedings, etc. "But, continues the court, "there is another class of cases which are absolutely privileged and depend in no respect for their protection upon their *bona fides*. The occasion is an absolute privilege; and the only questions are whether the occasion existed, and whether the matter complained of was pertinent to the occasion. In this class are embraced judicial proceedings. The proceedings connected with the judicature of the country are so important to the public good, the law holds that nothing which may therein be said with probable cause, whether with or without malice, can be slander, and in like manner that nothing written with probable cause under the sanction of such an occasion can be a libel. The pertinency of the matter to the occasion is that which is meant by probable cause, and probable cause is, in this class of absolutely privileged communications, what *bona fides* is to the class of conditionally privileged communications, which . . . are protected unless there is malice in fact."

It will be observed that the cardinal inquiry is whether the alleged defamatory matter is pertinent to the issue involved. As said by this court in *Shadden* v. *McElwee*, 86 Tenn., 152 (5 S. W., 604; 6 Am. St. Rep., 821), "where the matter alleged is pertinent to the issue, or fairly supposed to be so, although not

in the strictest sense relevant, the pleader is absolute-
ly privileged, although he may have entertained senti-
ments of malice to the adverse party." It is, more-
over, the rule that the question of pertinency or rel-
evancy is a question of law for the court. *Lea* v. *White,*
4 Sneed, 111; *Shadden* v. *McElwee,* 86 Tenn., 152
(5 S. W., 602; 6 Am. St. Rep., 821) ; *Jones* v. *Brown-
lee,* (Mo.), 61 S. W., 795 (53 L. R. A., 448).

It can not be seriously controverted that the alle-
gations of the bill in the United States circuit court
with respect to the disqualifications of the plaintiff
as an elector in the election of August 8, 1901, were
pertinent and relevant to the matter of inquiry in that
suit. The legality of the election was challenged in
that proceeding upon the ground that the municipal
aid subscription had not been carried by a three-
fourths majority of the voters, as required by law. It
was necessary that the bill should specifically recite
the names of the disqualified voters, in order that an
issue might be made in respect of their qualifications.
*Moore* v. *Sharp,* 98 Tenn., 493 (41 S. W., 587) ; *Black-
burn* v. *Vick,* 2 Heisk., 383.

The name of the plaintiff was included in a list of
about fifty citizens of the twentieth ward, who were
alleged to have been disqualified to vote in said elec-
tion on account of a failure to re-register after chang-
ing their residence in said ward twenty days before
the election. The matter alleged being pertinent to
the issue, it was absolutely privileged, and it is wholly

Crockett v. McLanahan.

immaterial whether the element of malice entered into the charge. As said in *Lea* v. *White,* supra: "It certainly can not be maintained that, because a person is malicious in his statements toward the adverse party, he will not be permitted to set up in his defense any matter that he may reasonably suppose would be available."

It is alleged in the declaration there was no probable cause, or that defendant could not have reasonably supposed it necessary in his case, to have alleged the libelous matter. It is said the demurrer admits this allegation. It is well settled that "a demurrer does not admit inferences from facts, nor conclusions of law averred." 6 Ency. Plead. & Prac., 336; *Park* v. *Kelly Axe Co.,* 1 C. C. A., 395 (49 Fed.; 618); *Kent* v. *Lake Sup. Ship Canal Co.,* 144 U. S., 75 (12 Sup. Ct., 650; 36 L. Ed., 352); Foster's Fed. Practice, sec. 106; *Hopper* v. *Town of Covington,* 118 U. S., 148, 151 (6 Sup. Ct., 1025; 30 L. Ed., 190); *Greeff* v. *Society* (N. Y.), 54 N. E., 712 (46 L. R. A., 288; 73 Am. St. Rep., 659).

"Averments in a declaration as to the meaning and interpretation of a writing attached thereto, or exhibited, are not admitted by a demurrer." *National Park Bank* v. *Halle,* 30 Ill. App., 17; 6 Ency. Plead. & Prac., 337, 397; Foster's Fed. Practice, sec. 106.

"Neither does a demurrer admit matters averred in the declaration contrary to law." *L. & N. R. R. Co.* v. *Palmes,* 109 U. S., 244 (3 Sup. Ct., 193; 27 L. Ed.,

922) ; 6 Ency. Plead. & Prac., 338, 398; Foster's Fed.
Practice, sec. 106; *Hooper* v. *Town of Covington*, 118
U. S., 148, 151 (6 Sup. Ct., 1025; 30 L. Ed., 190).

As already seen, the pertinency of the matter to the
occasion is that which is meant by probable cause.
The pertinency of the matter to the issue presented
is a matter for the court, and the demurrer does not
admit the want of probable cause, or any other con-
clusion of law which must be drawn by the court.
We think, as matter of law, the alleged defamatory
matter was absolutely and unqualifiedly privileged.

But it is insisted on behalf of plaintiff in error that
the present case falls within an exception to the gen-
eral rule which was recognized and established by
this court in *Ruohs* v. *Backer,* 6 Heisk., 395 (19 Am.
Rep., 598). In that case it was held that the rule as
to parties does not apply to strangers to the record,
and such statements, although pertinent, are only con-
ditionally privileged. The facts of that case were that
Ruohs, as next friend of two young girls, filed a peti-
tion in the county court of Hamilton county, in which
he asked the removal of their guardian upon the
ground alleged that 'the guardian has had in his
family a girl who is now probably over sixteen years
of age, who came to live with him about the age of
thirteen years, and has remained in his family ever
since. Her reputation is ruined, and she is now an ex-
ample of shame and prostitution." The court said,
viz.: "Having the undoubted right to present the pe-

Crockett v. McLanahan.

tition, the question recurs, was the reason assigned by
the plaintiff in error to the county court for the re-
moval of the guardian such a reason as he might law-
fully assign, and his petition a privileged communica-
tion within the meaning of the law?

"Although there are authorities which would, per-
haps, sustain the petition to the county court as fall-
ing within the definition of absolutely privileged com-
munications, this court is of opinion that a distinc-
tion should be taken between statements made in the
course of judicial proceedings relative to the parties
thereto and those which relate to strangers to the
record, and that the protection of private character,
as well as the peace of society, require that imputa-
tions against persons having no connection with the
judicial proceeding should, even when properly relat-
ing to such proceeding, be considered as falling within
the class of conditionally privileged communications."

The case of *Ruohs* v. *Backer* was decided in 1871 in
an opinion delivered by Judge Nelson. It has not
been reaffirmed, as erroneously stated by counsel, nor
has it been distinctly overruled. In the recent opin-
ion of this court in the case of *Cooley* v.
*Galyon,* ante, p. 1, decided at Knoxville, Sep-
tember term, 1902, (70 S. W., 607), a rule
antagonistic to that laid down in *Ruohs* v.
*Backer* was announced. It was held in that case that
slanderous words spoken by a witness in a judicial
proceeding, which are relevant and pertinent to the
subject of inquiry or responsive to questions, are ab-

solutely privileged. The court said, viz.: "It is immaterial that neither the plaintiff nor defendant were parties to the cause in which the defendant was called to testify. The majority of witnesses are not parties to the cause in which they are examined, and facts in relation to other strangers to the litigation often become the subject of necessary inquiry.

"If the privilege was confined to the parties, it would be reduced to narrow limits, and the proper administration of justice would be greatly embarrassed and made difficult."

It was held in *Henderson* v. *Broomhead*, 4 Hurl. & N. (English Exchequer), 569, that no action lies against a party who in the course of a cause makes an affidavit which is scandalous, false and malicious, though the person scandalized and who complains is not a party to the cause.

This question was under consideration in the recent case of *Jones* v. *Brownlee*, 61 S. W., 795 (53 L. R. A., 448), a case from Missouri, in which the court said, viz.: "With the exception of *Ruohs* v. *Backer*, 6 Heisk., 395 (19 Am. Rep., 598), we have not been able to find any case, either in England or the United States, which holds that an absolutely privileged communication made in a pleading in a cause ceases to be such when written or spoken as to one not a party to the suit. We think such a distinction can not be made without disregarding the public policy upon which the whole rule depends.

There are so many cases in which the rights and character of persons who are not parties to the suit become collaterally the subject of inquiry, and the right to make such inquiry so unquestionable, that no good reason for making the exception can be given so long as the rule itself is maintained." Again, in the case of *Johnson* v. *Brown et al.,* 13 W. Va., 136, the court wrote as follows: "The English and American courts, as will be seen by reference to many of the authorities before cited, in laying down the rule which is to determine whether libelous matter appearing in the conduct or proceedings of a cause is or is not to be considered as absolutely privileged, appears to assume that it in no manner depends upon whether it relates to or was uttered about a stranger to the suit or otherwise.

"While in many cases, as we have seen, qualifications are added in stating the rule which exempts from libel or slander suits utterances in the prosecution regularly of a suit, yet the qualification that they must not be uttered in reference to a stranger to the suit is never added. There is, nevertheless, one American case that decides that if a libelous statement, made in the course of judicial proceedings, is made in regard to a third person, such statement is not an absolutely privileged publication, but is only conditionally privileged, and is actionable if made with malice, without probable cause, and under such circumstances as would not reasonably create the belief that

they were true"—citing *Ruohs* v. *Backer,* 6 Heisk., 395 (19 Am. Rep., 598).

Judge Nelson, in his opinion, states, viz.: "If a guardian may be removed because his domestic associations are such as tend to the corruption and contamination of his ward, upon what principle is it that the person seeking his removal may not even name his associates and cause their character to be inquired into? There are many cases in which the rights and character of persons who are not parties to the suit become collaterally the subject of inquiry; and the right in this case," continues Judge Nelson, "is unquestionable."

If, then, the right to make the inquiry is material and pertinent, why should not the rule of exemption from liability, grounded on reasons of public policy, which favors a free and untrammeled investigation in courts of judicature, not apply when the allegation is made concerning a stranger, as if made against a party to the record? The exception undertaken to be made destroys the rule and defeats the objects of public policy upon which it was founded. It is not supported by any authority, but is contrary to the rule announced in all the cases, and should not be adhered to as a precedent.

The fact that cases of hardship may arise, and persons who have been defamed in the course of judicial proceedings may be left remediless, is no reason why a wholesome legal principle, founded upon reasons

of public policy, should be overthrown. A multitude of instances might be cited where the rights of the individual are required to be sacrificed for the public good.

Without further elaboration, we are of opinion the judgment of the circuit court on the demurrer was correct, and the same is affirmed.

MR. JUSTICE WILKES delivered the following dissenting opinion:

I can not concur in the view taken by the majority. I concede that the holding of the court in *Ruohs* v. *Backer,* 6 Heisk., 395 (19 Am. Rep., 598), is contrary to the great weight of authority, though I must insist the reasoning and justice of that holding are unassailable and unanswerable. Accepting as law, however the principle that statements made in the course of judicial proceedings by parties in their defense and by witnesses on examination are absolutely privileged, when they are pertinent and relevant, even though maliciously made, I think the present suit does not upon demurrer present such case.

Parties in their defense and witnesses in their examination should be privileged in making responses to pertinent charges and questions, because they are before the court upon compulsion and not upon their own motion, and they have nothing whatever to do with framing the issues or questions, but must meet them as made by others.

But I can not agree that a plaintiff may go into

court upon his own motion, and frame pleadings and present issues to suit himself, and under the issues thus presented libel a stranger to the record, and then defend himself from liability upon the plea that such libelous charges are pertinent to the issues which he has formulated.

To illustrate: I can not agree that the purest, most innocent woman, of the highest standing, may with impunity be libeled as co-respondent in a divorce suit upon grounds of adultery, simply because such a baseless charge is pertinent to the charge made. Other illustrations can be given, and if this is the rule, no man or woman in the community can be free from malicious and unwarranted attacks upon character under the guise of judicial proceedings.

To make a practical application of the present case: Mr. McLanahan brings a suit against the city. He charges Mr. Crockett, a stranger to the record, with the crime of illegal voting. Whether he did vote illegally could be ascertained by an investigation of the registration record. There is no allegation that this was done. The charge is made without regard to its truth, recklessly, but, so far as we can see, without actual malice. But, if done through malice, the result would be the same; that is, because he had charged Mr. Crockett with matter pertinent to the issue with the city, he was privileged to make it, even though made ignorantly, recklessly, or with express malice.

In such case, when the libelant makes the issue himself, he should be required to show good faith and probable cause in charging a stranger with crime, even though pertinent and relevant to the issue. He should be required to answer, and show that in making the libelous charge he acted after investigation and upon well-grounded information which he believed to be true.

In other words, the gist of my dissent and protest is that no man or woman shall be maligned and traduced in even judicial proceedings, unless the charges are made in good faith and upon reasonable ground to believe they are true. Especially is this true when the party traduced is a stranger to the records, the means of information as to the truth of the charge are open and matters of record, and the issues presented are made by the same party who makes the charges.

Under the facts disclosed in this declaration, the defendant should be required to answer and show that his charges were made in good faith and with probable cause.

Nor can I agree that the question of pertinency or relevance is a question of law in all cases. The majority cite to support this proposition *Lea* v. *White,* 4 Sneed, 111; *Shadden* v. *McElwee,* 86 Tenn., 152 (5 S. W., 602; 6 Am. St. Rep., 821); *Jones* v. *Brownlee* (Mo.), 61 S. W., 792 (53 L. R. A., 448).

In both the Tennessee cases it is expressly said that

pertinency and probable cause mean the same thing, and the question of probable cause or pertinency may be for the jury or not, according to the circumstances of the case. See, also, 13 Ency. Pl. & Pr., 107; 18 Am. & Eng. Ency. Law (2d Ed.), 1050.