THE NEW JERSEY SOUTHERN RAILROAD COMPANY, PROSECUTOR, v. AUGUST CHANDLER ET AL., APPLICANTS.

Submitted March 23, 1900—Decided June 11, 1900.

1. The territorial limits of the municipality known as the "Long Branch Police, Sanitary and Improvement Commission," as described in the supplement of March 23d, 1871 (*Pamph. L.,* *p.* 90), wherein the boundaries in part described as running "to the said New Jersey Southern Railroad, thence easterly along said railroad to the beginning," do not include any portion of the right of way or premises of said railroad. The territory included in such municipality is limited to the line of the right of way or premises of the railroad, and does not extend into or across the same nor include any portion thereof.

2. The particular description contained in the supplement as having been added to the territorial limits of the municipality as then existing, the monuments and places of location being distinguishable, must prevail in determining the extent of such territorial limits over any mere acts of user or attempted jurisdiction by the municipal authorities. The statute must govern in this matter if the location of the description therein can be ascertained and determined.

3. Where the right of way of the railroad is not within the limits of the municipality having by the statute exclusive power and control over streets and roads, the jurisdiction to lay out a public highway over such right of way is vested in the court of Common Pleas, and the surveyors of the highways under the appointment by such court.

4. A return of the surveyors of the highways laying out a public road duly made in the form prescribed by the statute and under proceedings in accordance therewith, and in the absence of any *caveat* against such return being duly recorded by the county clerk and certified by him as a part of the records of the court in the matter, in a return to a writ of *certiorari* to review such return, and the proceedings of the surveyors, will be presumed by the court to have been recorded by such clerk by order from the court, and if the return be attacked for its invalidity, the burden will rest upon the prosecutor to show that such return of the surveyors was not duly recorded, or not recorded by order from the court. *Quære.* Whether any invalidity can be charged against such a return of the surveyors, even though it be recorded without any order from the court, if it be so recorded in the absence of a *caveat*, and after the time limited for filing such *caveat* has expired.

On *certiorari.*

Before Justices GARRISON and LIPPINCOTT.

For the prosecutor, *John L. Conover* and *William A. Barkalow.*

For the defendants, *Thomas P. McKenna.*

The opinion of the court was delivered by

LIPPINCOTT, J. On March 31st, 1898, the Court of Common Pleas of the county of Monmouth appointed surveyors of the highways to lay out a public road in the township of Ocean in that county.

The application, appointment, the proceedings of the surveyors, and their return, are regular in form and in accordance with the statute.

There are two objections presented by the prosecutor. The first is that the whole or a part of the road so laid out lies within the territorial limits of the municipality of "The Long Branch Police, Sanitary and Improvement Commission," which it is contended has exclusive jurisdiction and power to lay out streets and roads within the boundaries. For the purposes of this case, if the road is thus located, this exclusive jurisdiction may be conceded.

In the application for the appointment of surveyors, and in their proceedings, and in the return made by them, and recorded, the road is described as lying within the township of Ocean, and if this be so in fact, the objection made to the jurisdiction of the Court of Common Pleas and the surveyors cannot prevail.

It appears by the record returned to this writ and the evidence in the case that previously to these proceedings there existed, partly in the township of Ocean and partly in the Long Branch Commission, a road or street known as Sixth avenue. This street or road ran in a southerly direction from the southerly line of the right of way of the New Jersey Southern Railway to a street called Broadway, or beyond it. This same street or road also ran in a northerly direction from the northerly line of said right of way. These roads or streets at said right of way were immediately opposite each other, and these side lines, if connected across the right of way of the railroad, would form exactly straight lines. No public road or street has ever been laid out or opened across the right of way of the railroad to connect the two ends of this street.

These proceedings under review are for the purpose of laying out a public road across the right of way of the railroad, so as to make Sixth avenue a continuous road or street. The location of this road is thus distinctly shown by all the proceedings and the return of the surveyors.

The whole question upon this part of the case is whether

any part of this road so located is within the boundaries established by the legislature of the Long Branch Commission.

Long Branch, as a municipality, was incorporated by the corporate name to which reference has been made, by an act of the legislature approved April 11th, 1867. *Pamph. L., p.* 976. It is conceded that the territorial limits established by this act do not include the location of this road, or any part of it. By a supplement approved April 3d, 1868 (*Pamph L., p.* 758), additional territory was added, but it did not cover any portion of the proposed road. On March 23d, 1871 (*Pamph. L., p.* 90), by a further supplement, additional territory was still added, which, it is contended by the prosecutor, did include at least a portion of this very location. It is unnecessary to set out the description of this additional territory in full as it is stated in the enactment. The beginning point is, "in the road leading in front of Cornelius Vanderveer's to the Eatontown and Seashore turnpike, at the intersection of the same by the New Jersey Southern Railroad." Then follows several courses and distances, and ends thus: "thence northerly along the easterly line of the same [referring to the line of certain property] to the said New Jersey Southern Railroad, thence easterly along said railroad to the place of beginning."

It will be seen that this description does not in any express terms include any portion of the right of way of the railroad, and if the location of the right of way is clear, and if the courses begin at the line of that right of way, and then end at it, neither the location of the public road nor any portion of it is included within this description. An effort has been made by evidence, *aliunde,* to demonstrate that at the time of the passage of the supplement of 1871, the right of way of the railroad company was an indefinite quantity in respect to the lines thereof, and that only the center or theoretical line of the railroad can be considered as then established, and to show by surveys and maps that this description properly interpreted included at least a portion of the location of the road. Upon this subject the burden would lie upon the prosecutor, and by an examination of this evidence, it is found to be

uncertain and ambiguous, and cannot lead the court to any satisfactory conclusion. If it leads to any conclusion it is that the right of way of the railroad company existed in 1871 as it exists to-day, and during the proceedings to lay out this road. Again it is attempted to be shown that the Long Branch Commission, at some time or times since the incorporation, has repaired the sidewalks on both sides of Sixth avenue and other streets running across the right of way. This testimony is quite indefinite, and the ordinances of the municipality offered in evidence do not reveal any evidence of the exercise or attempted exercise of any jurisdiction over this right of way, or upon the other side of it. It is conceded that previous to these proceedings no public road existed over the right of way of the railroad company, so that, neither by any surveys, or locations, or by the exercise of any jurisdiction, it is shown that this location is included within the territorial limits of Long Branch. It is considered that if these things existed, upon which a contention favorable to the prosecutor could be founded, that they could not prevail over the description contained in the supplement, and a practical construction of it, according to the courses, distances and monuments therein stated.

Resort, therefore, must be had to the legislative supplement and to the territorial limits therein established, and upon that subject the prosecutor contends that the words, "to the said New Jersey Southern Railroad, thence easterly along said railroad to the place of beginning," extends the territorial limits at least to the center line of the right of way of the railroad.

The supplement does not so state, and it is difficult to perceive upon what ground the line can by implication be so extended. The exterior lines of the right of way or premises of the railroad company have at all times been well known monuments, and, giving the words used in the description their ordinary meaning, the limits of this incorporation ended when such right of way was reached, and as limited by the further described line established along the railroad, it would seem to be entirely clear that no portion of the right of way

was included in the description. These territorial limits were carved out of the township of Ocean, and its jurisdiction over any territory formerly included in it could only be excluded by the clear and express language of the enactment which dismembered it. Besides, as it is commonly understood, a railroad is not its center or imaginary center line, but its right of way or its premises, and when the outward lines of the right of way or premises are established so as to be the subject of accurate location and identification, a line extending to the railroad cannot by any implication be extended into, upon, to the center or across the right of way or premises, and the line extending to the railroad certainly cannot be so construed to take any part of it, or any part of its right of way. The description expressly states that the line extends "to" the railroad, and no farther, and the succeeding course also expressly limits the description to that point.

The presumption of law which controls the description in an ordinary deed of conveyance, where the line is carried to a public highway, can have no application to this case. In such cases it is presumed that the parties intended the conveyance to be to the center or middle line of the highway, and the rule which so governs is one of construction, and limited to those cases where the grantor owns the fee in the highway. The law presumes that he intended the deed to convey his fee in the highway rather than that this strip be retained or reserved from the conveyance and which for any practical purpose would be of no use to him. But even in cases where the grantor was not the owner in fee of any of the land in the highway, this presumption does not apply, for it cannot be said that he intended to convey that which he did not own.

In *Church* v. *Stiles,* 59 *Vt.* 642, which is a well-considered case, the boundary line of the land conveyed was described as running "to the railroad; thence on said railroad three and three-fourths rods," and it was held that the description covered land only to the line of the right of way or railroad premises, and that such right of way and premises were monuments to which the line extended, and at which it ended. See, also, *Williams* v. *Savannah,* 94 *Ga.* 540.

In the case in hand it might just as well be contended that the description embraced and covered the whole right of way as that it should extend to the center thereof.

The conclusion is that no part of the right of way and lands of the railroad company were included in the territorial limits of the Long Branch Commission. These limits extended to this right of way, but took no part of it.

As to the second objection, the prosecutor contends that the record reviewed under this writ does not show that the return had ever been recorded by the clerk "by order from the court," as provided by the eighth section of the Road act (*Gen. Stat., p.* 2804), and, therefore, the return of the surveyors should be set aside.

I do not think that this objection can avail to the prosecutor for this purpose.

If the return be recorded, and made by the clerk a part of the records of the court, the want of the mere formality of a recital that it was made by order from the court will not of itself invalidate, nullify or render ineffectual the return. The validity of the return is established by the regularity with which it was obtained by the applicants for the road. It is to be delivered by the surveyors after being executed by them, to the applicant or applicants for the road, who shall within fifteen days after the date thereof transmit or deliver it to the clerk of the Court of Common Pleas of the county. If all the proceedings and the return be in compliance with the statute and the return actually recorded in the absence of a *caveat* the law declares expressly that it shall be effectual to establish the highway. A *caveat* suspends the recording of the return, and subsequent proceedings thereunder may invalidate or annul the proceedings and return, but in the absence of a *caveat,* the return being recorded by the clerk in the record-book of the court provided under the statute for that purpose, no other proceedings are necessary or essential to render it absolutely effectual. This seems to be the reasonable construction of the statute considering the fifth, sixth, seventh and eighth sections of the statute as being in *pari materia.* In fact it is so expressly provided by the fifth sec-

tion of the statute, only qualified by the sixth section, which provides that it shall not be recorded by the clerk in any event until the expiration of fifteen days after he has received the return. If no subsequent action, after the reception by the clerk, was taken either by way of *caveat* or otherwise against the return, the order of the court to record the same would be a matter of course, and may be presumed to have been made. It would be the duty of the court to order it recorded. It is true that under the eighth section, which provides for the entering of a *caveat* against the return and subsequent proceedings thereon, the statute provides that the clerk shall record the return "by order from the court," but I think the true construction of that section is that the power and duty of the clerk to record the return, as provided by the fifth and seventh sections of the act, is only so limited and restrained, if limited and restrained at all, by the entering of a *caveat*. The fact that the return was recorded clearly appears by the certificate of the clerk to the record sent up in answer to this writ. The fact of the record is not denied by the prosecutor.

The Court of Common Pleas, in regard to this subject-matter, is a court of general jurisdiction. *Humphreys* v. *Mayor, &c.,* 19 *Vroom* 588. And the return of the surveyors being certified as a part of the record of the court, such record must be treated as a verity, the law presuming in its favor that it was made in compliance with the statute conferring jurisdiction upon the court in the matter. The record of the return of the surveyors is then considered as having been made by the order from the court. The certificate of the clerk is that it appears with him as the record of the court. At least the burden would then be upon the prosecutor to show that the return was not recorded by order from the court, and this has not been attempted to be done. The court does not at all attempt to determine the result if this want of an order of the court had been shown, except so far as indicated in the previous discussion of this subject in this opinion.

For these reasons the conclusion reached is that the return of the surveyors is valid and effectual and cannot be set aside.

The writ of *certiorari* is dismissed, with costs.