# Tallassee Falls Mfg. Co. v. The State.

## Tax Proceedings.

(Decided June 17, 1915.   Rehearing denied July 2, 1915.
69 South. 589.)

1. *Counties; Boundaries; Watercourses.*—County boundaries described as running down or up or along watercourses, without more, fix the boundary line at the middle of the stream, whether it carries a large or small volume of water, and although the line of approach or departure be described as running to or from one bank of the stream.

2. *Same; Formation of New Counties; Boundaries.*—The act creating Elmore county considered (Acts 1865-6, p. 484) and it is held that the boundary of Elmore county lies along the thread of the Tallapoosa river, since, if it should be construed as lying along the west bank thereof, a part of the river would not be attached to any county, or else it would be attached to Tallapoosa county, and form a narrow strip extending out from it, over a distance of fifteen miles; the boundaries of Tallapoosa county at such point having been fixed at the thread of the river by the original act creating it.

CERTIORARI to Court of Appeals.

The State of Alabama proposed to assess the property of the Tallassee. Falls Manufacturing Company, situated west of the thread of the Tallapoosa River in Elmore county, and from a judgment so fixing it, the Tallassee Falls Manufacturing Company appeals to the Court of Appeals, where the judgment of the nisi prius court was reversed and remanded.

See 13 Ala. App. 623,, 68 South. 805. The State now brings certiorari to review and revise the judgment of the Court of Appeals. Writ granted, and the judgment of the Court of Appeals reversed and remanded.

HILL, HILL, WHITING & STERN, for petitioner.

J. M. CHILTON, for respondent.

SAYRE, J.—Upon consideration of the record in this cause, the court, sitting en banc, is of the opinion that

the writ of certiorari should be awarded, and the judg-ment of the Court of Appeals reversed. Stated in its simplest form, the question is whether the dividing line between Tallapoosa and Elmore counties is located at the middle or thread of the Tallapoosa river or at the western margin or bank of that stream.

The act of February 15, 1866, creating the county of Elmore out of parts of Coosa, Montgomery, Tallapoosa, and Autauga, reads: "That from and after the passage of this act, all that portion of Coosa county south of the township line dividing townships 20 and 21, all that portion of Tallapoosa county south of said township line dividing townships 20 and 21, and west of the Tal-lapoosa river, and all that portion of Montgomery coun-ty north of the Tallapoosa river, and all that portion of Autauga county east of the range line dividing ranges 16 and 17, be and the same are hereby constituted into a new county, to be called the County of Elmore."—Acts 1865-66, p. 484.

The result depends upon the meaning to be assigned to the words "west of the Tallapoosa river."

The act, to use the language of Mr. Justice Holmes in *Missouri v. Kansas,* 213 U. S. 78, 29 Sup. Ct. 417, 53 L. Ed. 706, amounts to "a wholesale adoption of the river as a boundary, without any niceties." But, of course, the river is not the boundary line in any exact sense, for the river has breadth, and is not a line. The act fixes no line except by implication. In order to ex-press a decision of the issue presented some language must be supplied. We must say that Elmore consists of that part of old Tallapoosa "west of the west bank of the Tallapoosa river," or that part "west of the med-ian line of the Tallapoosa river." Whether the just and proper implication is of the river's western bank or the

middle of the stream is a question that must be determined by reference to related legislation and extrinsic facts.

*Handly v. Anthony,* 5 Wheat. 374, 5 L. Ed. 113, and *Henderson Bridge Co. v. Henderson,* 173 U. S. 624, 19 Sup. Ct. 877, 43 L. Ed. 835, have been cited as sustaining the proposition that the act establishes the west bank of the river as the boundary line between the two counties. In those cases the cession by Virginia to the United States of all her territory "situate, lying, and being to the northwest of the river Ohio" was subject of construction. But we consider that the peculiar rules of construction obtaining in cases of grant upon which those cases were determined shed but little light upon the question now at issue.

(1) This is not the case of a grant. The state was by the act dividing up its territory for governmental purposes and according to its own unlimited discretion. Looking over a number of acts on the subject of counties and county boundaries, it has been observed that on frequent occasions the Legislature has described the lines it intended to fix as running up, down, or along water courses. This, without more, according to all the authorities, fixed the lines it intended to describe at the middle of the stream, whether it carried a large or small volume of water; and this, too, though the line of approach or departure be described as running to or from one bank of the stream.—*Howard v. Ingersoll,* 13 How. 381, 14 L. Ed. 189; *People v. Supervisors,* 125 Ill. 9, 17 N. E. 147. Again, it has been noted that in a number of instances counties have been created out of territory described as lying north, south, east, or west of a stream in such manner that the stream itself remained unassigned to any county, unless such descrip-

tions be understood as meaning north, south, east, or west of the thread of the stream. This is illustrated in the case of Lauderdale county where it was enacted: "That all that tract of country lying west of said county of Limestone and north of Tennessee river shall constitute a county."—Acts 1818, p. 12.

And so in the case of every county lying to the north or south of that river. The act of February 9, 1818 (Acts 1818, p. 49), made the basis of decision in *Russell v. Robinson,* 153 Ala. 327, 44 South. 1040, was intended only to assign islands which lay across the middle of the stream to counties north or south of the river according as they were nearer the north or south shore. The same method of fixing boundary lines is illustrated also in the act creating Hale county.—Acts 1866-67, p. 477. By the act of February 12, 1818 (Acts 1818, p. 57) "all that tract of country lying * * * east of the river Tombecke" was added to the county of Marengo, the western line of which at other points, and the eastern line of the counties on the other side of the river, it must be presumed, the Legislature by its previous acts had intended to fix at the middle of the stream —this by reason of the general rule of construction in such cases, and because no reason can be found in the language of the acts for locating the boundary at either bank in preference to the other.—Acts 1818, p. 18; *Howard v. Ingersoll,* and *People v. Supervisors, supra.* These illustrations suffice, we think, to show that habitually the Legislature, by such expressions as "territory west of the river," has intended to fix county boundaries at the middle of the stream. Otherwise, at many points the beds of streams would be wholly detached.

(2) And further it has been noted that the act describes that part of Tallapoosa to be included in El-

more as "all that portion of Tallapoosa county south of said township line dividing townships 20 and 21, and west of the Tallapoosa river." From the intersection of the north line of Macon county and the Tallapoosa river to the point where the line between Macon and Montgomery intersects the river, a distance of 15 miles approximately, the river flows in a southwest direction. This 15 miles is a part of the river to the "west" of which the territory of Tallapoosa, to be included in Elmore lies, for otherwise Elmore would be without designated boundary for that distance. And the line between Macon and Tallapoosa prior to the act of 1866 was at the middle of the river, for the act of December 18, 1832, by which both these counties were created, describes the line of Macon along this distance as "down said river," and the line of Tallapoosa as "up said river."—Acts 1832, p. 9. Evidently, then, unless the middle of the river is the dividing line between Tallapoosa and Elmore, the northern or western half of its bed along this distance is not attached to any county, or the county of Tallapoosa has been given a most grotesque shape by the attachment to it of this narrow strip, which stands out from it over a distance of 15 miles. But such a disposition as would be involved in either of the last-named alternatives is not to be presumed, nor can it be indulged, in the absence of language clearly excluding a more reasonable construction.

On the foregoing considerations the court has reached the opinion that the judgment of the circuit court was correct, and, in consequence, that the judgment of the Court of Appeals should be reversed.

Reversed and remanded. All the Justices concur.