(131 So. 552)

## ELMORE COUNTY v. TALLAPOOSA COUNTY.

### 5 Div. 76.

Supreme Court of Alabama.

Dec. 11, 1930.

See, also, 221 Ala. 678, 130 So. 206.

R. D. Coffman and Walter S. Smith, both of Birmingham, for appellant.

W. H. McGowen and G. R. Hubbard, both of Birmingham, for appellee.

Martin, Thompson, Turner & McWhorter, of Birmingham, C. T. Reneau, Huddleston & Glover, and Holley, Milner & Holley, all of Wetumpka, Denson & Denson, of Opelika, and Hill, Hill, Whiting, Thomas & Rives, of Montgomery, for appellant.

J. Sanford Mullins, of Alexander City, Jacob A. Walker, of Opelika, and Steiner, Crum & Weil, of Montgomery, for appellee.

THOMAS, J.

This is the second appeal. Elmore County v. Tallapoosa County (Ala. Sup.) 128 So. 158, 166.[1] In the opinion on the last appeal is the observation that Tallassee Falls Mfg. Co. v. State, 194 Ala. 554, 69 So. 589, a proceeding "between taxing authorities and the manufacturing corporation, is not decisive of the question of jurisdiction," citing as authority therefor Marengo County v. Wilcox County, 215 Ala. 640, 112 So. 243, 244; and that acquiescence may be shown under paragraph 11 of the original bill.

The territory in dispute is averred to be:

" * * * That originally constituted by the Act of the General Assembly, approved December 18th, 1832, to-wit: the range line dividing ranges 20 and 21, or, (2) the line fixed by the Act approved February 15th, 1866, to-wit: the western bank of the Tallapoosa River. But the respondent claims that the territorial extent and jurisdiction of the Complainant extends in a westerly direction no further than the median line or thread of the stream of the Tallapoosa River. * * *

"Complainant alleges that as averred in subsection (1) of paragraph 4 of this bill, all of said dam, power plant and other appurtenances of said Martin Dam are in Tallapoosa County; and that as averred in subsection (2) of paragraph 4 of this bill the West boundary of Tallapoosa County intersects said dam at a point defined and located as follows: Begin at the North-west corner of Section 36, T. 20, N., R. 21, E., in Elmore County, Alabama, and run south 139 feet, thence turning an angle 88 degrees and 50 minutes to the left, taking a course south 88 degrees and 50 minutes East, run 2541 feet. This is the point of intersection of the west boundary of Tallapoosa County with said

dam. But Respondent claims that the boundary line between said Counties at said point lies 125 feet, more or less, to the East of the point above defined, that is, at a point of coinciding with the median line or thread of the stream of the Tallapoosa River, and Elmore County is now exercising jurisdiction over and collecting taxes upon all that part of said dam, power plant and appurtenances lying west of the median line or thread of the stream of said Tallapoosa River."

The act creating Elmore county employs this description of the disputed line:

"That from and after the passage of this act, all that portion of *Coosa County south* of the township line, dividing townships twenty (20) and twenty-one (21); all that portion of *Tallapoosa county south* of said township line, dividing townships twenty (20) and twenty-one (21), *and west of the Tallapoosa river;* and all that portion of *Montgomery county north* of the Tallapoosa river, and all that portion of Autauga county east of the range line, dividing ranges sixteen and seventeen, be and the same are hereby constituted into a new county, to be called the county of Elmore." (Italics supplied.) General Acts 1865–66, p. 484.

The former decision is not decisive of the second appeal in the same case between the same parties if this court is impressed with a contrary view. Louisville & Nashville R. R. Co. v. Western Union Tel. Co., 195 Ala. 124, 126, 71 So. 118, Ann. Cas. 1917B, 696; Louisville & Nashville R. R. Co. v. Abernathy, 197 Ala. 512, 534, 73 So. 103.

It is further established by this court that a bill which is wholly without equity may be dismissed by the court ex mero motu. Birmingham Interurban Taxicab Service Corp. v. McLendon, 210 Ala. 525, 528, 98 So. 578; Dailey v. Koepple, 164 Ala. 317, 51 So. 348.

The constitutional question of legal existence of Elmore county may be laid out of the case as settled by the former appeal. Elmore County v. Tallapoosa County (Ala. Sup.) 128 So. 158.[1] The statute creating Elmore county definitely fixed its boundary with contiguous counties of Coosa, Montgomery, and Tallapoosa, and was construed and applied as affecting Elmore, Montgomery, and Tallapoosa counties in a taxing case, Tallassee Falls Mfg. Co. v. State, 13 Ala. App. 623, 68 So. 805; Id., 194 Ala. 554, 69 So. 589; on certiorari to this court, the latter decision reversed the Court of Appeals and was concurred in by all of the justices.

Section 11 of the bill as amended did not aver that there was an ambiguity in the act creating the county that, or such facts

as, presented a question of acquiescence, and not one of law and judicial knowledge. That is to say, the averments employed, without more, are in opposition to the fact of which the court takes judicial knowledge—the true line established between these counties. State ex rel. Glenn v. Wilkinson, 220 Ala. 172, 124 So. 211; Vol. 12 Enc. Pleadings & Prac. p. 1; vol. 18, Second Decennial Digest, p. 20; Louisville & Nashville R. R. Co. v. Palmes, 109 U. S. 244, 3 S. Ct. 193, 27 L. Ed. 922, 925. This on the assumption that a fact impossible in law is not admitted by demurrer.

If a boundary line of a county can be determined as a question of law, acquiescence in another line by contiguous counties is immaterial. Acquiescence can be considered only where there is uncertainty because of a conflict in the calls, descriptions, or monuments employed in the act fixing the line; as where (1) the monuments employed are equivocal and might be referred to one as well as another, or (2) where the monuments employed in defining the line fixed by law have been removed, disappeared, or effaced by time or the course of nature, or (3) where the lines, calls, or descriptions employed in the act are inconsistent or not susceptible of certain observation and determination. It is in such contingencies that the rule of acquiescence is resorted to and applied from the rule of necessity. The want of better evidence to refresh judicial knowledge of location of such true line warrants the courts, in such cases, in indulging the presumption of law that the line long acquiesced in and recognized as the true line is in fact the line as originally fixed by law. The true line, if determinable, cannot be changed by parol evidence; it is the line originally fixed that is to be located. Pounders v. Nix, ante, p. 27, 130 So. 537; Nolin v. Parmer, 21 Ala. 66.

In Ullman Bros. v. State, 16 Ala. App. 526, 79 So. 625, the description employed depended upon the location of the mouth of Wills creek, and there were, at the time, two mouths or points of discharge of that waterway; and the several acts of the Legislature had conflicting provisions as to the location and median boundary lines or trails and that original line as it passed a half mile west of Arthur T. Alexander's house in Cherokee county.

The case of Tidwell v. State, 70 Ala. 33, presented the question of venue in a murder case on disputed facts where there was a ridge dividing the waters of the Warrior and Cahaba rivers in the neighborhood of Green Pond—a question of fact the prosecution was required to prove.

In the Marengo-Wilcox Case the respective descriptions employed in the acts were in Wilcox county from the Choctaw corner "east to the middle of the range line," and that of Marengo county from the same corner "running east to the range line dividing ranges four and five"—as pointed out in that opinion, a variance of terminal point at the east end on the range line of one mile south of the middle point of the east boundary of township. Upon such uncertainty of description parol evidence of acquiescence was held admissible to aid judicial knowledge of where the true line was.

In Russell v. Robinson & Co., 153 Ala. 327, 44 So. 1040, 1041, the question was whether the location of the islands to the county "to the shore or river boundary of which they may be most near" should be "deemed and taken to constitute a part of the respective counties established by law within said survey" under the act of February 9, 1818, Toulmin's Dig. Laws Ala. p. 87, tit. 10, c. 15; and the court observed that, "The question is one of fact, dependent on evidence, and for determination by the jury, and not one of which the court can take judicial knowledge," under a plea of venue.

We should say further of Marengo County v. Wilcox County, 215 Ala. 640, 112 So. 243, 244, that it contained the observation that the boundary line fixed by the Legislature cannot be changed by "laches or acquiescence"; that in controversies between counties as to the exact location of the boundary at any given point, there is a "judicial question to be determined upon a construction of the defining statutes, with the aid of *such other legal evidence as may be received in case of uncertainty*." (Italics supplied.) We have indicated the nature of uncertainty that authorized legal evidence to aid in the construction under our decisions is a conflict or ambiguity in the descriptions and calls employed, or where the descriptive monuments have been removed or effaced by time or the course of nature, or are not susceptible to certain observations or determinations.

The general authorities are to like effect. In New Jersey S. R. Co. v. Chandler, 65 N. J. Law, 173, 46 A. 732, the description was "easterly along said New Jersey Southern Railroad," etc.; held the monuments and places of location, as then existing, being distinguishable must prevail. In the case of Johns v. Davidson, 16 Pa. 512, it was held where the line had never been surveyed and marked, in the absence of better evidence, it may be shown where the line was originally; that is, if the boundary fixed by the act was uncertain. The description employed in Grand County v. Larimer County, 9 Colo. 268, 11 P. 193, was of the territory which is inclosed, the bifurcation of the Sierra Madre or Continental Divide Mountains at Richthofen peak and known as North Park, and there was use of the term "Snowy Range, near the summit of the Long's peak, and Medicine Bow range"; to explain such general terms,

testimony was admitted and further to show that certain of these lands were hunting grounds for the Indians, rather than for occupancy by settlers of the county formed.

The description in Commonwealth v. Stahr, 162 Ky. 388, 172 S. W. 677, was explained as being that "to a stake on the brow of the hill west of the bridge on said State Line road," etc. And the inquiry of fact in Board of Com'rs of Ouray County v. San Juan County, 58 Colo. 67, 143 P. 841, 842, was "where the junction of Mineral creek and the main branch of the Uncompahgre river is."

It appears from the foregoing and former decision that the court takes judicial knowledge of the fact that the median line or thread of the stream is the true line between the counties of Elmore and Tallapoosa, and such of the allegations in the bill to the effect that the territory between the thread of the stream and the west bank of the Tallapoosa river lies in Tallapoosa, are opposed to what the court judicially knows to be the fact, and those averments are thus negatived by such judicial knowledge. State ex rel. Glenn v. Wilkinson, 220 Ala. 172, 124 So. 211; Tallassee Falls Mfg. Co. v. State, 194 Ala. 554, 69 So. 589.

It follows that the demurrer should have been sustained on the pleading as now shaped or before us, and the decree of the trial court is reversed, and the cause is remanded.

Reversed and remanded.

ANDERSON, C. J., and SAYRE, GARDNER, BOULDIN, and BROWN, JJ., concur.

FOSTER J., not sitting.

