(118 So. 556)

### GREENFIELD et al. v. POWELL.

#### (5 Div. 990.)

Supreme Court of Alabama.   Oct. 18, 1928.
Rehearing Denied Nov. 22, 1928.

398

Denson & Denson, of Opelika, for appellants.

BOULDIN, J. Plaintiff recovered upon count A, statutory ejectment, and count C, for conversion of sand and gravel from the lands.

The subject-matter of the suit was a parcel of some seven acres of land lying in the bend of Euphaupee Creek. Roughly, it is a segment of a circle, lying in section 2, with the north and south section line between sections 1 and 2 as the sector.

Plaintiff's lands are described in his muniment of title thus:

"All that portion of the east ½ of section 2 in township 17 and range 23, lying north of Euphaupee Creek and containing 218 acres, more or less."

Defendants' lands are described in conveyances as follows:

"Thirty five acres, more or less, in the southwest quarter of section 1, T. 17, R. 23, south of Euphaupee Creek and north of the Western Railway of Alabama, being all of the said S. W. ¼ that is situated between said Euphaupee Creek and the Western Railway of Alabama; also one hundred acres, more or less, in the east half of section 2, T. 17, R. 23, being all of said E. ½ of section 2, T. 17, R. 23, lying and being between said Western Railway of Alabama and said Euphaupee Creek. It being my intention to hereby sell and convey to said S. L. Brewer all of my interest in and to the lands known as our Chehaw place, and containing one hundred and thirty five acres, more or less."

O. A. deBardeleben, of Tuskegee, and Ball & Ball, of Montgomery, for appellee.

It seems conceded that the land in suit, chiefly a bed of sand and gravel, was on plaintiff's side of the creek when he acquired his lands in 1905, but that by shifting of the bed of the creek, it now lies on the other side of the thread of the stream. Defendants claim it by accretion.

██ Briefly the law is that adjoining proprietors of lands having a non-navigable stream as a boundary line between them take each to the middle or thread of the stream. Tallassee Falls Mfg. Co. v. State, 194 Ala. 554, 69 So. 589.

"Where, by a sudden and violent or artificial change, the channel or shore on which riparian or littoral lands are bounded is shifted, the

boundaries of such lands are unaffected, and remain in their original position; but where the change is gradual and imperceptible, whether caused by accretion, reliction, or encroachment, the boundaries shift with the shifting of the channel or shore. If the land of the riparian proprietor is increased he is not accountable for the gain, and if it is diminished he has no recourse for the loss. * * * It is only when the change in the stream is sudden, violent, or visible that the title remains the same. It is not enough that the change may be discerned by comparison at two distinct points of time. It must be perceptible when it takes place. The test as to what is gradual and imperceptible in the sense of the rule is that, although the witnesses may see from time to time that progress has been made, they could not perceive it while the process was going on." 9 C. J. p. 195, § 82.

Pippen v. Carpenter, 208 Ala. 1, 93 So. 878; 1 Fornham's Waters, page 329 (2d Ed.) page 1562 et seq.; Philadelphia Co. v. Stimson, 223 U. S. 605, 32 S. Ct. 340, 56 L. Ed. 570.

Appellee insists this doctrine is inapplicable to the case in hand.

Euphaupee Creek takes a very winding tortuous course through sections 1 and 2. A blueprint map found in the record, known as the Pickett map, is copied in the report of the case to clarify the question now discussed.

It will be observed the disputed parcel indicated on the map by the red line lies in a loup or bend, the creek crossing the section line into section 2, there curving south and east, cutting again into section 1, and then turning west across east half of section 2.

The "Old Run" shown on the map indicates the run of the creek in section 1 at the time of the government survey some 90 years ago. While the record is not quite clear as to the exact run of the creek when plaintiff purchased, the map shows substantially plaintiff's contention by dotted lines about the section line, but of somewhat different bearing.

Now appellee insists that the lands deeded to defendants adjoining the lands of plaintiff at this point were limited to section 1, and by no reliction and accretion can the line pass into section 2.

■ If defendants' deed were limited to lands in section 1, this contention would be correct. Lands on one side of a stream within a given subdivision cannot by accretion ever pass the outside boundary limited in the deed.

■ But this deed is not limited to lands in section 1. It conveys one continuous track, describing the portions in each section for fuller identification. Despite its windings the general course is east and west. Defendants' lands as a body are bounded north by this creek and on the south by the Western Railway of Alabama, not shown on the Pickett map, but on the Hall map found in the record. This includes lands to the middle of the creek in all its meanderings, whatever direction the creek may flow at a given point. Clearly the evidence shows that after the creek first crossed the section line into section 2, the parties and their predecessor held possession to the creek as a common boundary. While the section line was the eastern boundary of plaintiff's lands to its intersection with the creek, from there on the creek was the boundary at all points in section 2. It follows that any gradual shifting of the bed of the creek as above defined would carry the line with it, and the gravel bed in question become the property of defendants by accretion. Plaintiff's lands are north of the creek, following its meanderings to his outer boundary, the section line. If the creek bed has changed gradually as above defined his line is still the thread of the stream.

We conclude as matter of law the boundary follows the present thread of the stream, unless the shift of its channel was sudden and perceptible.

■ Plaintiff testified such was the fact, that within a few years after his purchase, during a time of unusual freshets within a period of two weeks, nearly all this change was wrought.

In this he stands alone. Several of his witnesses and all the witnesses for defendants testify that during the period of some 20 years the high and unprotected bank on plaintiff's side of the stream has gradually yielded to the current in times of freshets, and the sand and gravel bar on the other side has gradually formed. This evidence is clear, convincing, and reasonable. Allowing all due presumptions, we are clearly convinced the finding on this issue was wrong. The motion for new trial should have been granted.

■ There was no error in refusing evidence that plaintiff had the benefit of accretions at another bend where he sold a 12-acre parcel lower down the stream.

The question of intent to claim accretions is not involved. Given the deeds, carrying no contrary provisions, and given the facts the law determines the boundary with reference to accretions and relictions.

■ That defendants in 1922 leased this gravel bed from plaintiff, but thereafter refused to renew, and gave notice of their own claim of title thereto, could work no change of title.

Reversed and remanded.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.